# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **TAMMIE POTTER, BREAKFAST AT TAMMIE'S LLC,** <br> Plaintiffs, <br> <br> VS. <br> <br> **CITY OF DOTHAN,** <br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) **JURY TRIAL DEMANDED** <br> ) <br> ) <br> ) |

## COMPLAINT

**Plaintiff Tammie Potter**, through the undersigned counsel, asserts the following causes of action and seeks to recover the following damages against Defendants City of Dothan.

## JURISDICTION AND VENUE

1. This Court has federal question jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. §§ 1331 and 1343, and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

2. This Court has subject matter jurisdiction under 42 U.S.C. §§ 1981 and 1983.

3. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because the events giving rise to this claim occurred in this district and Defendant conducts business in this district.

## PARTIES

4. Plaintiff Tammie Potter ("Ms. Potter" or "Plaintiff") is a black female citizen of the United States and of the State of Alabama. She is a resident of Houston County.

5. Plaintiff Breakfast At Tammies LLC ("Breakfast at Tammie's") is a business entity engaged in food service and catering, incorporated and headquartered in the State of Alabama.

6. Defendant City of Dothan is a municipality incorporated in the State of Alabama.

## FACTS

7. The National School Lunch Program, sponsored by the School Nutrition Program, provides free meals to children 18 years of age and under, reimbursed through the Alabama Department of Education.

8. Sponsors of the Lunch Program are responsible for the meals, paperwork, training, and operation of the program and must attend mandatory training by the state department.

9. From 2007 until 2019, all of the City of Dothan's meals for the Lunch Program were prepared by the Dothan City Board of Education.

10. In 2019, a new administration at the Dothan Board of Education resulted in their inability to continue preparing meals for the City of Dothan for the Lunch Program.

11. The City of Dothan bid out the contract for providing meals after school during the school year separately from the contract for providing meals during the summer.

12. The City of Dothan awarded a three-year contract to Breakfast at Tammie's in 2019 for after-school meals, beginning in the fall of 2019.

13. Under this contract, Breakfast at Tammie's provided meals at the cost of $0.91 per snack, $3.36 per supper

14. The after-school-meal contract was modified after the COVID-19 pandemic began, during which time Breakfast at Tammie's provided an agreed-upon greater number of meals to the City of Dothan than were initially agreed upon at the outset of the after-school-meal contract in 2019, at the same rate as was initially agreed upon.

15. The modified contract was renewed in the fall of 2020 and again in the fall of 2021.

16. Breakfast at Tammie's performed satisfactorily under the after-school-meal contract for the three years in which it was in place.

17. The City of Dothan awarded the summer meal preparation contract to Mildred Tea Room for June and July 2020.

18. In the summer of 2021, the Dothan City Board of Education resumed preparing summer meals, providing 2,600 meals and snacks daily.

19. For the summer of 2022, the summer-meals contract was again put out for bid.

20. The Invitation for Bid and Contract put out by the City of Dothan for the Summer 2022 meals contract stated that it "contains an invitation to registered food service management companies to bid for the furnishing of unitized meals to be served to children participating in the Summer Food Service Program….This document sets forth the terms and conditions applicable to the proposed procurement. Upon acceptance it shall constitute the contract between the bidder and the Sponsor named below."

21. The invitation required bidders to submit the payment they would require to provide 21,588 total breakfasts, 21,588 total lunches, and 10,080 total snacks.

22. The invitation also required the bidding rate for meals be at or below $2.37 for breakfasts, $4.13 for lunches, and $0.96 for snacks.

23. The number of meals requested in the invitation for bid was revised downward when the state lifted COVID restrictions (which also discontinued a

mobile meals program), but the provision that the Invitation and subsequent Bid would constitute the contract once accepted did not change.

24. Breakfast At Tammie's submitted a bid of $129,202.08, bidding $2.20 per breakfast, $3.36 per lunch, and $0.91 per snack.

25. Breakfast At Tammie's won the bid, with bidder Mama T's placing second, having bid $139,893,60.

26. Mama T's bid $2.20 per breakfast, $4.00 per lunch, and $0.60 per snack.

27. Leisure Services Department head Alison Hall signed the Bid Tabulation Sheet confirming the award of the bid to Breakfast At Tammie's.

28. The bid award was also confirmed by city leadership.

29. Both the City of Dothan and Breakfast at Tammie's began preparations for Breakfast At Tammie's to provide the meals.

30. In May of 2022, Department of Leisure Services employee and manager of the meals program Ms. Stephanie Wingfield was placed on administrative leave by the City of Dothan.

31. Ms. Wingfield was later terminated in June of 2022.

32. The Alabama Court of Civil Appeals has ruled that Ms. Wingfield's termination occurred without Ms. Wingfield being allowed the due process of law.

33. Ms. Wingfield has a currently pending federal lawsuit for wrongful termination against the City of Dothan.

34. During the time that Ms. Wingfield was on leave and after she was terminated, Breakfast at Tammie's was unable to have any meaningful contact with the City of Dothan.

35. Plaintiffs never received any active communication from the City of Dothan informing them that the contract was cancelled or terminated; rather, in the wake of Ms. Wingfield's termination, the City of Dothan simply stopped responding to Plaintiffs' communications.

36. Defendant City of Dothan did not provide Plaintiffs with the information or access necessary to carry out their duties under the contract and did not pay Breakfast at Tammie's any amount under the contract.

37. The contract between Defendant City of Dothan and Plaintiff Breakfast At Tammie's for 2022 summer meals ("the contract") was wrongfully terminated by the City of Dothan.

38. The wrongful termination was related to the City of Dothan's accusations that Ms. Wingfield had improperly informed Breakfast at Tammie's of Mama T's bid amount, allowing Breakfast at Tammie's to undercut Mama T's bid.

39. This did not happen. Ms. Wingfield did not improperly inform Breakfast at Tammie's of Mama T's bid.

40. Furthermore, it was improper and illogical for the City of Dothan to believe that the reason that Breakfast at Tammie's bid was lower than Mama T's was because of any insider information; as the most significant reason that Breakfast At Tammie's bid was lower was due to Breakfast At Tammie's significantly lower bid per lunch, which Breakfast At Tammie's bid at the same amount that Breakfast At Tammie's had previously bid for supper meals under the previous after-school meal contract with the City of Dothan.

41. The City of Dothan's termination of the contract was due to their alleged association with Ms. Wingfield, who in turn was terminated due to racial animus, as she is a Black woman who did not "fit in" with her predominately white department.

42. The City of Dothan's termination of the contract resulted in a significant loss of revenue for Breakfast at Tammie's.

## CLAIM FOR RELIEF

### Count 1
### Breach of Contract

43. Plaintiff incorporates herein by reference as if fully set forth the allegations of ¶¶1-42 of the Complaint.

44. Plaintiffs had a valid, enforceable contract with Defendant for the preparation of meals in the summer of 2022.

45. Defendant breached the contract by wrongfully terminating it, by

disallowing Plaintiffs from carrying out their portion of the contract, and by not paying Plaintiffs the amount agreed to under the contract.

46. As a direct and proximate result of Defendant's breach, Plaintiffs suffered damages.

## Count 2
## 42 U.S.C. § 1983
## Equal Protection

47. Plaintiff incorporates herein by reference as if fully set forth the allegations of ¶¶1-42 of the Complaint.

48. Defendant, acting under color of state law, deprived Plaintiffs of their rights to equal protection under the Fourteenth Amendment.

49. Specifically, Defendant's racial animus toward Ms. Wingfield, and her termination due to that animus, directly affected Plaintiffs and caused the wrongful termination of the contract.

50. Defendant's actions were arbitrary, capricious, and lacked a rational basis, resulting in the wrongful termination of Plaintiffs' contract.

51. As a direct and proximate result of Defendant's actions, Plaintiff suffered damages.

## Count 3
## 42 U.S.C. § 1983
## Due Process

52. Plaintiff incorporates herein by reference as if fully set forth the

allegations of ¶¶1-42 of the Complaint.

53. Defendant, acting under color of state law, deprived Plainitffs of their rights to due process under the Fourteenth Amendment.

54. Specifically, after allowing Plaintiffs to bid for a contract and awarding them said contract, Defendant provided no process whatsoever before, during, or following the unlawful termination of that contract.

55. Defendant's actions were arbitrary, capricious, and lacked a rational basis, resulting in the wrongful termination of Plaintiffs' contract.

56. As a direct and proximate result of Defendant's actions, Plaintiff suffered damages.

### Count 4
### 42 U.S.C. § 1981
### Interference With Bidding and Negotiating Contract

57. Plaintiff incorporates herein by reference as if fully set forth the allegations of ¶¶1-42 of the Complaint.

58. Plaintiffs had the right to make and enforce contracts, including the bidding and negotiation of the contract with Defendant.

59. Defendant intentionally interfered with Plaintiffs' contractual rights based on discriminatory reasons.

60. Specifically, Defendant's racial animus toward Ms. Wingfield, and her termination due to that animus, directly affected Plaintiffs and caused the wrongful

termination of the contract.

61. As a direct and proximate result of Defendant's actions, Plaintiffs suffered damages.

## Count 5
### Intentional Interference with a Business Relationship

62. Plaintiff incorporates herein by reference as if fully set forth the allegations of ¶¶1-42 of the Complaint.

63. Plaintiffs had a valid business relationship with Defendant.

64. Defendant intentionally and unjustifiably interfered with this relationship, causing its termination.

65. As a direct and proximate result of Defendant's interference, Plaintiffs suffered damages.

## PRAYER FOR RELIEF

WHEREFORE PREMISES CONSIDERED, Plaintiffs respectfully request the following relief:

   a. That this Court render a judgment finding the Defendants liable for the aforementioned causes of action;

   b. An award of compensatory damages, in an amount to be determined at trial;

   c. An award of punitive damages, in an amount to be determined at trial;

d. That this Court issue an Order requiring the Defendants to pay for all litigation costs, expenses, and reasonable attorney's fees associated with the filing of this action pursuant to 42 U.S.C. 1988;

e. Prejudgment and post-judgment interest;

f. Injunctive relief requiring Defendant to reinstate Plaintiffs' contract and implement fair bidding practices; and

g. All other relief to which Plaintiffs are entitled or that the Court deems just and proper.

**PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY.**

Respectfully submitted,

*/s/Richard A. Rice*
Richard A. Rice
*/s/ Spencer E. Bowley*
Spencer E. Bowley
THE RICE FIRM, LLC
115 Richard Arrington Jr. Blvd. N.
Birmingham, AL 35203
Telephone 205 618-8733
rrice@rice-lawfirm.com
spencer@rice-lawfirm.com

**PLEASE SERVE DEFENDANT VIA CERTIFIED MAIL AT THE FOLLOWING ADDRESS:**

City of Dothan
c/o Wendy Shiver, City Clerk, City Clerk's Office
126 N. Saint Andrews Street
Room 213
Dothan, AL 36303